UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN C. P.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:22-cv-069 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, John P., on March 23, 2022. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, John P., filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging a disability onset date of May 12, 2010. (Tr. 55). The Disability Determination Bureau denied John P.'s applications initially on January 31, 2011, and again upon reconsideration on March 28, 2011. (Tr. 55, 48, 50). John P. subsequently filed a timely request for a hearing on April 11, 2011. (Tr. 115). A hearing was held on April 23, 2012, before Administrative Law Judge (ALJ) Edward Studzinski. (Tr. 805). The ALJ issued an unfavorable decision on June 26, 2012. (Tr. 52-72). John P. appealed the decision to the District Court, which remanded the decision on January 6, 2015. (Tr. 734-47).

Following a second hearing, ALJ Studzinski issued a second denial. John P. again appealed to the District Court, and it remanded the decision, finding that it did not comply with

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

the Court's 2015 remand order.  (Tr. 1281).  After a third hearing, ALJ Romona Scales denied John P. benefits on April 22, 2019.  (Tr. 1144-63).  John P. appealed this third denial to the District Court, which remanded the case again on November 24, 2020.  (Tr. 1695-1712).  A fourth hearing was held via telephone on June 16, 2021, as well as a supplemental hearing held on October 19, 2021, before ALJ Scales.  (Tr. 1545). Vocational Experts (VE) Lori Capizzi and Kari Seaver also appeared at the June 2021 and October 2021 hearings.  (Tr. 1580, 1616).  The ALJ issued an unfavorable decision on November 24, 2021.  (Tr. 1542).  The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

First, the ALJ found that John P. met the insured status requirements of the Social Security Act through June 30, 2025.  (Tr. 1548).  At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that John P. had not engaged in substantial activity from May 12, 2010, through December 31, 2018.  (Tr. 1548).

At step two, the ALJ determined that John P. had the severe impairments of degenerative disc disease of the cervical and lumbar spine, chronic pain disorder, obesity, and anxiety disorder/adjustment reaction with mixed emotional features.  (Tr. 1548).  John P. also alleged disability due to asthma/allergies, hypertension, and depression.  (Tr. 1548).  However, the ALJ indicated that those impairments caused no more than minimal limitations on his ability to engage in basic work activities and considered them non-severe.  (Tr. 1549).

At step three, the ALJ concluded that John P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 1549).  The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment.  (Tr. 1549-50).  The ALJ considered whether the severity of John P.'s impairments met or medically equaled the criteria of

Listings 1.04, 1.15, 1.16, 12.04, and 12.06. (Tr. 1529-50). The ALJ considered the paragraph B criteria for mental impairments, which required at least one extreme or two marked limitations in a broad area of functioning which include: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. (Tr. 1550-51). The ALJ indicated that a marked limitation meant the ability to function independently, appropriately, effectively, and on a sustained basis was seriously limited, while an extreme limitation was the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 1550). The ALJ found that John P. had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. (Tr. 1550-51). John P.'s mental impairments did not cause at least two "marked" limitations or one "extreme" limitation; therefore, the ALJ determined that the paragraph B. criteria were not satisfied. (Tr. 1551).

After consideration of the entire record, the ALJ then assessed John P.'s residual functional capacity (RFC) as follows:

> From May 12, 2010 through December 31, 2018, after careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; frequently reach in all other directions; occasionally overhead reach bilaterally; no exposure to hazards, including slippery, wet, uneven surfaces, moving machinery and unprotected heights; can understand, remember and [carry out] simple instructions/tasks and decisions; can maintain adequate attention and concentration for said tasks, however, may be off task 10% of the workday and would work best in a job that requires end of day quotas; he would be able to complete/meet end of day quotas; can interact appropriately with

3

> supervisors but can have occasional and superficial contact with coworkers and the general public with no intense interaction with the general public (e.g., cannot be a sales person); no tandem tasks that require talking or thinking with others to complete tasks; no fast paced production meaning no tandem work assignments, machine regulated work or hourly production requirements, or extensive paperwork; can manage simple changes in the workplace; he may need to alternate sitting and standing for five minutes each hour but would remain on task and at the work station and he may require a cane for ambulation.

(Tr. 1552). After considering the evidence, the ALJ found that John P.'s medically determinable impairments reasonably could have been expected to cause the alleged symptoms. (Tr. 1553). However, she found that the John P.'s statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1553).

At step four, the ALJ found that John P. was unable to perform his past relevant work as a truck driver or security guard. (Tr. 1567). However, the ALJ found jobs that existed in significant numbers in the national economy that John P. could perform. (Tr. 1567). Therefore, the ALJ found that John P. had not been under a disability, as defined in the Social Security Act, from May 12, 2010, through December 31, 2018. (Tr. 1568).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have

defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20**

**C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

John P. has requested that the court remand this matter for additional proceedings for three reasons. He alleges that the ALJ erred in evaluating the opinion of the orthopedic medical expert, in evaluating the opinion of his orthopedic surgeon, and in evaluating his subjective symptoms.

First, John P. alleges that the ALJ erred in evaluating the opinion of Dr. Kendrick, the orthopedic medical expert who testified at a prior 2019 hearing. John P. filed his application prior to March 27, 2017, and therefore 20 CFR § 416.927c applies, rather than 20 CFR § 416.920c. When evaluating medical opinions and reports, an ALJ "may not selectively consider medical reports" and must "consider 'all relevant evidence.'" ***Myles v. Astrue***, 582 F.3d 672, 678

(7th Cir. 2009). While an ALJ may adopt medical opinions concerning a claimant's ability to perform work-related activities, the RFC assessment is an issue reserved for the ALJ. **20 C.F.R. §§ 404.1545(e), 416.945(e);** *SSR 96-5p*, 1996 WL 374183, at *2 (July 2, 1996) ("[A] medical source statement must not be equated with the administrative finding known as the RFC assessment"). An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone — not a treating or examining doctor — to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing **20 C.F.R. § 404.1520(d)**).

The law distinguishes between treating physicians and non-treating physicians in social security benefit cases. The opinion of a treating physician concerning a patient's condition is "give[n] more weight ..., since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." *Misener v. Astrue*, 926 F.Supp.2d 1016, (N.D. Ind. 2013) (internal citations omitted); *see also* *Boiles v. Barnhart*, 395 F.3d 421, 426 (7th Cir. 2005). However, the same is not said for non-treating physicians. *See Misener*, 926 F.Supp.2d at 1031 (the court found that the ALJ was never required to give special treatment to a non-treating physician's opinion when the statement in question was not a "treating physician's intake note, progression note, or diagnostic impression," rather it was "an RFC assessment, plain and simple"). Nevertheless, "an ALJ must articulate, at least minimally, his analysis of the evidence so that [the] court can follow his reasoning." *Skarbek v. Barnhart*, 390 F.3d 500, 503, 105 Fed. Appx. 836 (7th Cir. 2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Dr. Kendrick testified at the 2019 hearing, stating that he was a board-certified orthopedic surgeon. (Tr. 1206). Dr. Kendrick testified that he did not believe John P. either met or equaled any listing impairment, either individually or in combination. (Tr. 1207). Dr. Kendrick opined that "the best [John P.] could do on a good day would be sedentary work." (Tr. 1207). He then clarified his opinion to state that he believed John P. could sustain only sedentary work on a regular basis due to pain but could not do any work on a bad day. (Tr. 1207, 1220). Dr. Kendrick also concluded that it was possible John P. might have more bad days than good days, but that there was nothing in the record to support how many good days versus of bad days that he would have. (Tr. 1220, 1223). Dr. Kendrick also found that John P. obtained some pain relief on a relatively low dose of narcotics. (Tr. 1224).

As for functional limitations, Dr. Kendrick opined that John P. could balance, stoop, kneel, crouch, crawl, and climb stairs occasionally, could not climb ladders, ropes, or scaffolds, and could not work around workplace hazards such as dangerous moving machinery or unprotected heights. (Tr. 1209). Lastly, Dr. Kendrick found that John P. would be limited to occasional reaching overhead due to his cervical spine impairment. (Tr. 1209).

The ALJ gave Dr. Kendrick's opinion great weight, finding it to be consistent with the record as a whole. (Tr. 1566). The ALJ noted that John P.'s physical examinations showed no worse than moderate findings and that the most updated medical records did not show sensation or strength deficits. (Tr. 1566). The ALJ also noted that John P. worked part time as a security guard for a few years starting in 2013 and that there was no evidence that it was accommodated work despite John P.'s assertions. (Tr. 1566).

John P. argues that the ALJ should have accepted Dr. Kendrick's opinion that he could not work on a bad day and that he could possibly have enough bad days in a month to preclude

employment. However, the ALJ properly supported her decision. The ALJ explained that the medical record did not show worse than moderate findings, with no strength or sensation deficits, and that no updated diagnostic testing showed any issues. (Tr. 1566). Furthermore, Dr. Kendrick testified that any attempt to determine how often John P. would experience a bad day would be "totally subjective." (Tr. 1223). The ALJ gave great weight to the functional limitations that Dr. Kendrick provided as part of his opinion and adopted them in the RFC. (TR. 1209, 1552). Moreover, while John P. asserts that Dr. Kendrick did not find that he could perform sedentary work on a regular and continuing basis, Dr. Kendrick clarified that he believed sedentary work was the best that John P. could perform on a regular basis. (Tr. 1207).

John P. asserts that Dr. Kendrick's opinion required the ALJ to provide accommodations for absences, however, there was nothing in his opinion to indicate he believed John P. would require excessive absences due to his pain. The ALJ specifically discussed Dr. Kendrick's opinion that John P. might experience more bad days than good days but noted that "there was no evidence to put that into context for this specific claimant." (Tr. 1565). The ALJ properly supported her finding.

Next, John P. claims that the ALJ erred in evaluating the opinion of his Dr. Chang, his orthopedic surgeon. Dr. Chang provided multiple chronic pain questionnaires and opinions in this case. The first opinion, dated February 2011, stated that he saw John P. every one to two months since his first visit in July 2010. (Tr. 427). Dr. Chang found that John P. could sit for ten minutes at one time, for a total of less than two hours in a workday, and that he could stand or walk for fifteen minutes at a time, for a total of less than two hours in a workday. (Tr. 428). He further found that John P. would need to change positions from sitting to standing and that he would need one to two unscheduled breaks of five to ten minutes during each workday. (Tr.

9

428). Dr. Chang opined John P. could rarely lift and carry less than ten pounds and that he could never lift or carry anything heavier. (Tr. 429). Dr. Chang provided a second opinion on March 22, 2011, wherein he concluded that John P. was "permanently disabled" and had reached maximum medical improvement. (Tr. 454).

Dr. Chang provided a third opinion, where he stated that he had seen John P. four times between July 2010 and January 2011. (Tr. 523). There, he found that John P. could sit for 15 minutes at a time, for less than two hours in a workday, he could stand for thirty minutes at a time, for a total of about two hours in a workday, he would need to get up and walk for five minutes every thirty minutes, and he would need to shift positions at will. (Tr. 524-25). In a change from his prior opinion, Dr. Chang concluded that John P. would need to lie down two to three times a day for five to ten minutes, could occasionally lift and carry less than ten pounds, rarely lift and carry ten pounds, and never lift and carry anything heavier. (Tr. 525-26).

A fourth statement from March 2012 indicated that Dr. Chang saw John P. twice a year. (Tr. 566). At that time, Dr. Chang found that John P. could sit for five minutes at a time, for less than two hours in a workday, stand for ten minutes at a time, for a total of less than two hours in a workday, would need to shift positions, and would need two to three unscheduled breaks every day. (Tr. 567-68). In January 2016, Dr. Chang again provided an opinion stating that John P. had "reached maximum medical improvement and remains permanently disabled." (Tr. 1091).

The ALJ provided Dr. Chang's opinions little weight. The ALJ acknowledged that Dr. Chang was a treating physician, but she found that his examination reports did not support his opinion that John P. was disabled with exertional and postural limitations. (Tr. 1562). The ALJ noted that his reports showed, at most, tenderness and limited range of motion in his low back and a stable neurologic examination. (Tr. 1562). The ALJ noted that Dr. Chang had seen John

10

P. three or four times a year yet had not ordered any new diagnostic studies, recorded any new or additional abnormalities, or "provide any treatment other than refilling prescriptions for pain medications." (Tr. 1562). Finally, the ALJ found that Dr. Chang's opinions appeared to be based on John P.'s subjective complaints "because there [we]re very few documented clinical findings." (Tr. 1562-63).

More specifically, the ALJ found that Dr. Chang's opinion that John P. could not work from more than four hours was not supported by the moderate findings on MRI studies, the lack of clinical findings, negative straight leg raise testing, and an inconsistently abnormal gait. (Tr. 1563). The ALJ also noted that some of the clinical findings on Dr. Chang's opinions were not found in his own treatment notes, and clinical findings recorded by other physicians directly contradicted his findings. (Tr. 1563). The ALJ found that Dr. Chang's repeated opinion that John P. was permanently disabled was an issue reserved for the Commissioner. (Tr. 1563). The ALJ acknowledged Dr. Chang's specialty but found that these statements did not provide commentary on John P.'s functional status and were contradicted by the physical examinations and treatment notes. (Tr. 1563).

John P. first takes issue with the ALJ's acknowledgment that Dr. Chang only treated John P. three or four times per year and argues that it was improper for the ALJ to discredit a treating opinion simply because he was not seen more frequently. The ALJ did not solely rely on the frequency of treatment. She also discussed how Dr. Chang's opinions were not supported by the record.

John P. also asserts that the ALJ impermissibly found that Dr. Chang relied on John P.'s subjective statements in forming his opinions. John P. specifically argues the ALJ impermissibly relied on MRI findings without providing a supported basis for the finding. As an initial matter,

11

the ALJ did not solely rely on this MRI as evidence that contradicted Dr. Chang's opinion. Rather, the MRI was listed as one of many reasons the ALJ found that the evidence contradicted Dr. Chang's opinions. Moreover, the MRI in question was interpreted by a physician. (Tr. 1115). The physician's note stated that there was a paracentral disc herniation causing mild flattening of the right ventral spinal cord at C4/C5, bulging discs and disc protrusions at C3/C4 and C4/C6 without cord compression, and no abnormal spinal cord signal intensity. (Tr. 1116). The ALJ considered the MRI as part of the list of evidence that contradicted Dr. Chang's opinions.

Additionally, John P. argues that the ALJ did not consider how Dr. Chang's opinion was consistent with the opinions of Dr. Valek and Dr. Giricz, whose opinions contained similar limitations regarding absences, the need for unscheduled breaks, and the need for an at will sit/stand option. The ALJ provided four paragraphs of analysis of Dr. Chang's opinions where she adequately discussed the relevant factors. First, the ALJ considered the supportability and consistency of the opinion with the opinion of Dr. Valek, John P.'s general practitioner, yet found that Dr. Valek's opinions that mirrored Dr. Chang's opinions also were afforded little weight, as they provided no indication of John P.'s functional capacity. (Tr. 1563). The ALJ also afforded Dr. Giricz's opinion little weight, noting that Dr. Giricz had treated John P. only for a short period of time, and his opinion and assessments were not supported by diagnostic findings and the totality of the evidence. (Tr. 1564). She further found that Dr. Giricz's opinion "appear[ed to be] based on the claimant's pain allegations, which as discussed above, [we]re not credible to the extent alleged." (Tr. 1564). John P. asserts that the ALJ ignored two treatment notes that indicated reduced range of motion, reduced grip strength, sensory changes, tenderness, muscle atrophy, and straight leg raising. (Tr. 427, 523). However, the ALJ found that although

12

there was some mention of those issues, the medical evidence did not consistently indicate that the limitations were necessary. (Tr. 1563). For all of these reasons, the ALJ properly supported her decision to give Dr. Chang's opinions little weight.

Finally, John P. asserts that the ALJ erred in evaluating his subjective symptoms. John P. makes three specific arguments related to his subjective symptoms including that the ALJ erred in relying on objective medical evidence, that the ALJ impermissibly relied on his conservative treatment, and that the ALJ erred in relying on his ability to perform part time work.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain her evaluation with specific reasons that are supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective

complaints, the relevant objective medical evidence, and any other evidence of the following factors:

    (i)      The individual's daily activities;
    (ii)     Location, duration, frequency, and intensity of pain or other symptoms;
    (iii)    Precipitating and aggravating factors;
    (iv)    Type, dosage, effectiveness, and side effects of any medication;
    (v)     Treatment, other than medication, for relief of pain or other symptoms;
    (vi)    Other measures taken to relieve pain or other symptoms;
    (vii)   Other factors concerning functional limitations due to pain or other symptoms.

See **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify her assessment with "specific reasons supported by the record." **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her [subjective symptoms evaluation] in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." **Murphy v. Colvin**, 759 F.3d 811, 816 (7th Cir. 2014); see SSR 16-30, 2016 SSR LEXIS 4, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." **Ghiselli v. Colvin**, 837 F.3d 771, 777 (7th Cir. 2016); see also **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

14

John P. alleges that the ALJ improperly relied on the objective evidence in finding his subjective symptoms to be less limiting than alleged. An ALJ may not dismiss a claimant's subjective symptoms solely based on objective medical evidence. *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015); SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, *5. Here, the ALJ did not rely solely on the objective medical evidence in the record. The ALJ looked to objective evidence, which included activities of daily living and John P.'s own reports to medical professionals. For example, he denied issues with sleep, appetite, concentration, and energy on several occasions, his hygiene and grooming were good, and his anxiety related complaints focused on his financial situation rather than being more generalized. (Tr. 1554-58). John P.'s partner stated that he would isolate and become irritable on bad days but was cooperative during treatment and worked part-time as a security guard. (Tr. 1554-58). He also referred to his partner as his caregiver, but she referred to herself as his domestic partner. (Tr. 1554-58). However, earlier in the record he referred to her as his girlfriend and provided no evidence of having a caregiver or the need for one. (Tr. 1554-58). Additionally, he stated that he visited friends regularly and had no difficulty getting along with authority figures. (Tr. 1554-58). Therefore, John P.'s argument is incorrect, as the ALJ did not solely rely on objective medical evidence in finding his subjective symptoms less limiting than alleged.

John P. further argues that the ALJ erred by considering his reluctance to pursue more aggressive treatment options recommended by his treatment providers. The ALJ repeatedly acknowledged John P.'s reluctance to pursue injections or surgery and acknowledged that he was not unreasonable for being reluctant to pursue more advanced treatment. (Tr. 1561). The ALJ also noted that John P. was on a relatively low dose of pain mediation through his family doctor, and that he had tried only chiropractic care and physical therapy outside of pain medication. (Tr.

1561). The ALJ did not impermissibly rely on a lack of aggressive treatment, rather, she considered it in combination with his relatively low dose of pain medications and the lack of sensation or strength deficits. (Tr. 1561).

Finally, John P. asserts that the ALJ erred in relying on his part time work during the relevant time period. The ALJ mentioned John P.'s part time work twice in her analysis, and both times it was referenced in part of a larger analysis regarding his subjective symptoms. (Tr. 1560-61). The ALJ noted that although John P. stated that this work was accommodated, there was no evidence or employee statement corroborating it. (Tr. 1561). The Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work full time based on part-time employment." **Lanigan v. Berryhill**, 865 F.3d 558, 563 (7th Cir. 2017). The ALJ considered John P.'s ability to work part time over an extended period only as evidence his symptoms were not as severe as he alleged and not as evidence that he could successfully maintain full time employment.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 17th day of November, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge